Good morning, and may it please the Court. The District Court in this case issued a pre-filing injunction. It did so without notice, without a hearing, without evidence to support said injunction, without any findings in support of the injunction. Any of these four issues alone requires vocator of the injunction. All four of them combined certainly do. But there's a threshold question this Court must first issue, which is whether the case was properly before the District Court in the first place. Even in the context of an interlocutory appeal from an injunction, this Court must first address the District Court's authority to hear the case at all. In this case, the District Court had to not have authority over either of the cases that were before the District Court and that were consolidated in this injunction order. Isn't that backwards? Isn't the first question whether we have appellate jurisdiction? And obviously 1292 provides the appellate jurisdiction. So I certainly agree with that. You're right. The first question is this Court's jurisdiction, but 1292a provides the basis for injunction here for jurisdiction here because the District Court issued an injunction. It enjoined Integranet from filing other cases in State or Federal court without first seeking the District Court's permission. This Court in other cases has said that's an injunction. That's how we get to have a jurisdiction here. So that strikes me as a straightforward question. The second question, though, is a little bit more interesting. Why? You would agree with me, I would assume, that we do not generally have interlocutory appellate jurisdiction. Take the injunction out for a second. If there's just a denial of a motion to remand to State courts we don't have jurisdiction over that, right? I agree with that. Absent the injunction, that would be absolutely correct. So why does the injunction transform an otherwise unappealable denial into something that we not only can review, but we have to review? Well, first, I would point the Court to point you to this Court's prior decision in Sykes v. Texas Air, which is cited at page 6 of our reply brief, which states that when you're here on an interlocutory appeal and a challenge has been made in the case properly there, the Court must first address the issue of whether the case should be remanded to State court. And why is that? I think there's probably a couple of good reasons for it. First, you know, extrapolating from cases like Ruhrgas and Sinochem, there's some threshold issues you always have to address. And before we start addressing the merits of injunctions, there's a — you always have to establish the threshold issue of was it properly before the district court at all. So that would certainly be one route. But, see, that's not normally the way we would do it, right? Normally, we — our question would be, is there a final decision under 1291 that we can review, right? And it could be totally wrong. The denial to remand to State court could be completely wrong. But normally, we would just say, not a final decision. Congress has not vested this court with the jurisdiction to reach that question. I suppose maybe under Mandamus we could do it. But we would say there's no 1291 final decision as to the denial of the motion to remand. But somehow we can bootstrap the — the denial to remand onto some other independent source of appellate jurisdiction like 1292 in the injunction. Yeah. If you're asking me what is the origin of that, I don't know that the Federal courts of appeals have always been crystal clear if they're relying on pendant appellate jurisdiction or some other doctrine. But I can tell you this Court in Sykes has done it. And a couple other cases I found while I was preparing that may be relevant to this issue. There's a case — these are both unpublished cases of this Court. Maxim Medical v. Michelson, 1999, Westlaw 423-112. That was an appeal from a preliminary injunction. And the Court said as a threshold issue, we have to deal with personal jurisdiction. And it said, before we deal with — when we get to the merits of the preliminary injunction, we're going to deal with that question. And it analyzed Swint and some of the prior cases along that line. This Court again in D.P. Solutions v. Rollins, 34 Federal Appendix 150, again, addressed personal jurisdiction as a threshold issue on an interlocutory appeal from a preliminary injunction. Other Federal courts, the Second Circuit in particular, the MTBE case has reached the same result. So I would point to both this Court's precedent and the precedent of other courts that you always must have — once you're up here in the Fifth Circuit, however we got here, you always have to address that threshold question of the lower court's authority to hear the case. Now, if I could, I'd like to turn to what that was or, more importantly, wasn't here. Prior to consolidation, there are two different cases. The TIP case, which was a trade secret case, and the Roth case, which was a breach of fiduciary duty case involving Mr. Roth's conduct while he was still an employee of IntegraNet. I'm going to start with the second case first. I think it's a little easier. There was no allegation of diversity jurisdiction, no allegation of Federal question jurisdiction, no allegation of Federal officer in the Roth case. The sole basis for the removal there was simply it's related to the TIP case that's already in Federal court. This Court has said time and again that factual interdependence is not a gateway to Federal court, is not a basis for Federal jurisdiction. The energy management case in particular is probably the best example of that. It's cited in our briefs. So Roth can't be the basis for this injunction, because Roth, there's no basis for Federal jurisdiction alleged. Then the first case is the TIP case. There's two issues there, Federal officer removal under 1442, and then supplemental jurisdiction under 1367. Well Care removed that case and alleged it was a Federal officer. It was dismissed 11 days after the removal under Rule 41A1 Romanet 1. No one had filed an answer yet, and we just non-suited Well Care, and so they're out. So 11 days into Federal proceedings, there's no longer an alleged Federal officer. So the question then becomes, A, was there a proper Federal officer removal at all? And then, B, even if there was, and we don't think there was, was supplemental jurisdiction properly exercised in this case? If I could, I'd like to start with supplemental jurisdiction, because I think it's probably the easier path, given where this Court is right now on Federal officer and the upcoming en banc argument. I would suggest that we may not need to reach the Federal officer issue here. Under Enix v. Lamb passes, this Court has held that a district court abuses its discretion in facts that I would submit are indistinguishable from the facts here. Let me ask you, is there actually no ruling on the motion to remand? So there's no rule on the motion to remand. What Enix, in part, is concerned about, and what Judge Pardo's dissent is concerned about, is overturning on an abuse of discretion standard the application of the district judge of the proper analysis. A, do we have any reflection of Judge Hughes' analysis at all? And if so, B, I guess, what is that? Yes, Your Honor. He did rule on the motion to remand after briefing was complete in this appeal. We filed a motion to take judicial notice about two weeks ago. And we submitted the order he did denying the motion to remand in the Tip case. He issued it in June of 2019. And the entirety of his analysis, the motion to remand is denied. It's a single sentence with no explanation. So he has never, either in a hearing or in anything in writing, told us what the reasoning is. He just said the motion to remand is denied. Thank you. And Enix made clear that when the basis for being in Federal court is gone very early in the case, when nothing of substance has happened, when the fact, both the statutory and common law factors are met, it's an abuse of discretion to keep a case in Federal court under, in that situation. That's where we are here. The Federal officer was gone, alleged Federal officer was gone, in May 2018. No answers have been filed. Since then, the remaining defendants have filed answers. They have filed motions to dismiss under Rule 12c. As we sit here today, those 12c motions have not yet been ruled on. No discovery has occurred, other than the Court ordered my client to produce some documents to the Court after a hearing. It held a hearing on the 12c motions this past June. It ordered the submission of some documents. We have done that. There's now another hearing set for September 24th coming up. But to date, nothing of substance has occurred, other than the district court vacated the TRO that was granted by the State court prior to removal. So under Enix, we have an abuse of discretion here in the exercise of supplemental jurisdiction. I think you can stop your jurisdictional analysis at those two points. Roth, there's no basis at all. Here, once well care was gone, even if it was a Federal officer, there's no basis for, it's an abuse of discretion for supplemental jurisdiction to be exercised here. If you disagree with me on that, and we have to reach the Federal officer issue, well care, as a Medicare Advantage organization, is not a Federal officer for purposes of 1442. And I really want to focus on the acting under prong and not so much the causal nexus issue. Because really the issue here is the threshold issue, are they a Federal officer or are they acting under a Federal officer? The answer to that is no. The best authority I can give you on that is Judge Boggs' opinion from the Sixth Circuit in Ohio State Chiropractic Association versus Humana Health Plan, where he looks at this issue in detail. And he points out that Medicare Advantage organizations basically just get money from the government and then they go out and provide a private health option to people who are otherwise eligible for Medicare. They get a lot of freedom in how they handle that business, how they do that business. The insurers in that case make their money by being able to provide the services for their insured for less than they get paid in a lump sum for that insured by the Federal government. But the whole purpose of the Medicare Advantage system under Part C of Medicare, under Part A and Part B, is it's not the insurer providing Federal benefits. Rather, it's a private market solution that the government has created. And simply put, in this case, well care is a Medicare Advantage. They are a risk-bearing entity. A few weeks ago, this Court issued its decision in the St. Charles surgical case. We submitted a 28-J letter on it last week. And in St. Charles, it held that Blue Cross Blue Shield was a Federal officer for purposes of FEBA, the Federal Employee Health Benefits Act. Because there, Blue Cross was essentially hired by the government to administer Federal benefits for Federal employees. And the analysis this Court provided was that in that context, Blue Cross is not a risk-bearing entity. It's not acting as an insurer at all. It's simply acting as a claims processor, processing claims the way that a Federal employee would have to, but for the government contracting with Blue Cross. We are not in that situation here. So I would submit that under Federal officer jurisdiction, well care isn't a Federal officer at all. If they're not a Federal officer, the TIP lawsuit was never properly removed in the first place. Again, I don't know you need to reach that issue. If you find an abuse of discretion on 1367C, I think you could say that and then leave Federal officer for another day. But that's where we are. Here, well care and TIP have argued that, well, we had to send you this letter because there's some regulation that said we had to do it. First of all, the mere fact that they are, there's no regulation that said they had to send these letters at issue. Are there regulations that govern marketing? And are there guidelines? Sure there are. But the mere fact of regulation and Federal guidance, that's what Springport and Watson said, is not enough to become, to cloak a private company or a private actor with the adornments of Federal officer status. That doesn't get you there. There is nothing in this record, and they can show you nothing in this record, where a Federal officer via communication, regulation, or otherwise required that the cease and desist letters at issue be sent. But that really gets more to the second issue of if there are, if well care was a in this case. Again, the answer is no, because there's no direction here. But we don't need to get to that causal piece here. Whether, I'm reticent to go there, but I think under whatever standard the Court adopts in the en bas coming up on that causal nexus, narrow or broad, we're not going to get there on these facts. But I don't think this Court needs to go that far down the road. I think under supplemental or the threshold issue of Federal officer status at all, the prior prong, this case can be decided. Once the Court has further questions, I will sit down and wait for rebuttal. All right, Counsel. Thank you. Your Honors, may it please the Court. First of all, we do not believe this was an injunction issue by Judge Hughes. All he merely said was stop filing more lawsuits against the same people without coming back to me. It sure sounds like an injunction to me. I mean, do you think Integrinet could have, after the order, filed claims directly or indirectly in courts or with agencies in the State of Texas without the express written permission of Judge Lynn Hughes? Could they have done that? No, they could not have, Your Honor. And why could they not have done that? They couldn't because of the Court's order, but the Court's order, how many more lawsuits do they want to file against the exact same people for the same causes of action? Was Mr. Roth a defendant in the TIP suit? Yes, he is, Your Honor. And was he being challenged? Was he being sued for trademark infringement or intellectual property claims, as the other TIP defendants were? Yes, he was in the TIP suit. And what was the claim against him in the second suit? The second suit was a breach of fiduciary duty and negligence claim. But if I may address this, Your Honor, the Court, their own pleadings in paragraph 21 of their consolidated complaint, they specifically referenced the fact that while he, and this is only discussing case two, only the consolidated case two, only against Mr. Roth, it says that while he was employed at Integranet, he was forming this other entity, TIP, to the detriment of Integranet. They brought the exact same fact pattern with no change into case two. And then what they did was that we had some discovery, some state court discovery in case two, and they decided that they would list as potential parties TIP and Dr. Palacios, who had absolutely nothing to do with this potential breach of fiduciary duty. They're trying another bite at the apple. And Judge Hughes saw that. That was explained in my motion, in my notice of removal and my motion to consolidate. I laid it out for the judge. And it's in the record on appeal. So I felt like these were the same cases. They're looking at the exact same fact patterns here. Did you ask for an injunction against any further suits in State or Federal court? Did not, Your Honor. Was there a hearing before the Court entered this injunctive order? There — well, we've had hearings. There was not specifically about this issue. We've had three lengthy hearings in the case. And we have another one scheduled at the end of this month. And what would be the Federal judicial power to enjoin a party not to file suit in a State court? Where would that come from? Yes, Your Honor. That comes from, in the consolidation, that comes from the same fact patterns that they also alleged against WellCare. Before they dismissed the case and the judge exercised its supplemental jurisdiction, they specifically alleged that WellCare cautiously interfered with their contracts, tip-tortiously interfered with their contracts, and Mr. Roth and Dr. Palacios interfered with their contracts, and that they all — they all conspired together, and they all committed grievous harm together for the same exact facts. So — I'm sorry. I'm asking for a source of law. What would be the source? Is there a statute, a constitutional provision? Obviously, you didn't ask for it. There was no motion in front of the district court. So where would the judicial power come to enjoin a private party against filing suits in State court? I'm not sure where there would be a Federal power for that, Your Honor. But the case was removed based on the same fact pattern. And then subsequent to that, the — these courts have made it clear, including the Supreme Court case of Carlsbad Technology and this Court's opinion in Sibley v. Lemaire, that a State district court can maintain jurisdiction over a case after every single Federal cause of action has been dismissed. And this is sort of axiomatic Federal law. There hasn't been any further — I mean, there have been numerous cases discussing this for these cases, too. And the Court decided when it was removed that there was — because under Rule 42 and under the powers of consolidation, for purposes of judicial economy and comity and the same facts, the same witnesses, the same issues, the Court said it would make more sense to bring them all together in one case. And that's what Judge Hughes did, and that's also the consolidation is an abuse of discretion standard. And as a result of the abuse of discretion standard, he exercised his jurisdiction. He exercised supplemental jurisdiction at the very beginning of the case. He exercised his jurisdiction over the consolidation in an appropriate way. In the case, in this Court's case, in Rodriguez v. Pacificare, this Court has stated that a factual basis for Federal and State claims are sufficiently intertwined between parties. A Federal court can adjudicate the State claims. They intertwined the case between WellCare and the TIP defendants. I'll call them all the TIP defendants. They've used the same operative nucleus of facts. I do want to discuss another case, if I may, and it's a case cited by the appellant. It's the Hall v. Hall case, and it's a very recent U.S. Supreme Court case. And in the Hall case, they've — and we know that nothing of the Supreme Court rights is pure dicta, but they did pull out one sentence from a ten-page opinion. But the holding of that case makes it clear — and that case involved consolidation — and the holding in that case makes it clear that they expressed no view on any issue prior to the consolidation. And they also made it clear that courts enjoy wide discretion in determining whether to consolidate or not. Also, appellants' counsel brought up the Enix case, and this Court's opinion in Hegemeyer v. Caldwell County, which references the Enix case, also makes it clear that the district courts have wide discretion in keeping a case after all the Federal claims have been dismissed. WellCare was brought into the case as a Medicare Advantage entity. And it was brought in, and it asserted its — I don't represent WellCare, but it asserted its Federal officer position because under a very specific CFR, 42 CFR 422.111e, WellCare decided that it wanted to terminate its dealings, its contract with IntegriNet. It's entitled to do that. Under that regulation, it is encouraged to give notice to all the physicians, and it is mandated to give notice to all patient enrollees of primary care physicians. And many of the physicians are primary care physicians. So WellCare was a Federal officer for point of removal. In fact, the appellant cites a decision by Judge Bloom denying Federal officer jurisdiction to a medical advantage case. I cite another opinion by Judge Bloom granting Federal officer jurisdiction to a Medicare Advantage case. The cases are all over the map, but there was plenty of opportunity for jurisdiction for both, and there was acting under, they were acting under Medicare's rules, procedures, and regulations, not merely guidelines, but their requirements. And then, second of all, there was a nexus between the appellant's actions and WellCare — and then WellCare's, the causes of action alleged against WellCare and WellCare's actions, and the nexus was they sued them for tortious interference with contract, just like they sued us. So they've made their nexus. I'd also like to bring up the case of Hoover v. Morales in this Court, in which a district court's decision to grant or deny an injunction is also reviewed under an abuse of discretion standard. So the judge granted that — if we call it an injunction, the judge granted that injunction in order to prevent Integrinet from suing the same people for the same causes of action over and over again. And that is also an abuse of discretion. It seems to me you're in a somewhat unusual position. You didn't ask for the injunction. The granting of the injunction allowed the other side potentially to bring this case before us at this time, and now you're here defending it. Is it — are you indeed defending this injunction? At this point, yes, Your Honor. We're in Federal court. We've had three lengthy hearings. The last hearing was two and a half hours, in which we discussed a number of issues. We have another hearing set at the end of this month. Judge Hughes is intimately familiar with the facts and the law involved in this case. So we believe it's proper and appropriate to keep the case in Federal court at this time. We don't see a reason to remand. There is supplemental jurisdiction. That's also an abuse of discretion standard. We don't believe that he's abused his discretionary standards. The — there are a number of cases that talk about consolidation, in which there are common questions of law and fact, which is why the case — why I sought to remove the case 2 that was ostensibly against Mr. Roth, but as I've shown, they made the same allegations now in discovery against Dr. Palacios and Tip, and I really had no alternative. I only had 30 days from that point to remove or not remove, because discovery is construed as other papers for purposes of removal. That's the Madden case. And what happens when you remove and when you consolidate, district courts must weigh the risk of prejudice and confusion wrought by consolidation against the risk of inconsistent rulings on common factual and legal questions, and the burdens on both courts if the cases are not consolidated. For purposes of judicial economy, it makes perfect sense to put these cases together since they have chosen to conflate the facts against all of the defendants in their complaint, their consolidated complaint, in their discovery, and as they proceed with the case. And I've cited the cases of Hendricks v. Ray Vestas at Manhattan and State of Ohio v. XRL Montgomery v. Lewis Trouth in determining whether consolidation is appropriate. The court balances the value of time and effort saved by consolidation against the inconvenience, delay, or expense increased by it. Consolidation is particularly appropriate when the actions are likely to involve the same witnesses and arise from the same set of facts, and that's in Hansen v. District of Columbia, and that's what we have here. We have the exact — there won't be any other different witnesses. In fact, there won't be any different expert witnesses. It will be the same witnesses. It looks that they all arise out of virtually the same fact pattern. And so there is — the court was right in exercising its supplemental jurisdiction when WellCare removed. WellCare was a Medicare Advantage organization acting under the aegis of CMS when it sent out those cease and desist letters and had to notify all the patient enrollees. And for that reason, we ask that the court affirm the order of consolidation, unless the court has any other questions. Thank you, Your Honors. First, with respect to the intersection between Hall v. Hall and Rule 42, the Supreme Court in 2018 in Hall was crystal clear. Before consolidation can occur under Rule 42, the court must first assess whether there's an independent jurisdictional basis for each of the two cases to be consolidated. That was the holding in Hall. While Hall did not go on and then decide whether the jurisdiction was going to be that left that for the lower courts on remand, Hall was crystal clear on this point. No matter how factually interrelated they are, even if Rule 42 might support consolidation, there must be an independent jurisdictional basis for each case before consolidation. That's Hall's holding. You can't get around that. Now, on the factual point, these two cases are not the same factual case as Appley's counsel suggests. The Tip case, in which Roth is a defendant to be sure, involved our claims that Roth, when he left our employ, took confidential information with him and then sometime in late 17 or early 2018, used that confidential information to try to lure doctors out of our network and into the network that run by Dr. Palacios that Mr. Roth now works with. That's what's going on there. That's a trade secret tortious interference case involving conduct that occurred after he left our employment. The Roth lawsuit is a breach of fiduciary duty case involving Mr. Roth's failure to seek payments owed to IntegraNet while he was still an employee of IntegraNet. Dr. Palacios and his company have nothing to do with that second case. They're certainly not involved in that case. It may well be that Mr. Roth knew he was leaving to go join them. He may have had some motives related to his new business venture. But that would involve his conduct while he was still our executive and failing to seek the monies we were owed from a universal HMO. This is not the same case in two different complaints. These are different cases which Mr. Roth, to be sure, is a defendant in both because he did two different wrong things. Are there going to be an overlap of some witnesses? Sure. Mr. Roth's going to be involved in both. And when you heard that reference to discovery, that was just our disclosures of people who may have knowledge that we did under the Texas Rules of Civil Procedure for initial disclosures. There has been no discovery in Federal court, no depositions, no interrogatories, no document request to date. The district court has sort of kept a tight rein on things. The court, Appellate's counsel suggested, well, Mr. or the district court has had several hearings and is familiar with the facts. All those hearings have been based solely on the pleadings and the district court's questions about facts and inquiries, but not with actual evidence that's come through the discovery process. We are still at the beginning of this case. The motion to remand in the TIP lawsuit wasn't ruled on for a year after it was filed. The motion to remand in Roth still hasn't been ruled on. And that's the one where there's no basis to be in Federal court at all. We heard reference that the district court cases are kind of all over the place on how Medicare Advantage organizations are treated for purposes of Federal officer. Two points. First, the Sixth Circuit has been very clear on this, and there's no distinction between what was going on in the Ohio case and this case. It's on all fours. Second, those cases where the district courts have found the Medicare Advantage organization is a Federal officer, they're in the context of prompt pay. And there's some – prompt pay is the one area where the Federal government actually does exercise a fair bit of control and specifically says we're supplanting State court – State law regarding prompt pay obligations. Now, there's a fascinating theoretical discussion as to whether that should go under the causal nexus prong of Federal officer or the acting under prong. I don't think you need to reach here because we don't have the level of control necessary to be a Federal officer under this Court's precedent. And with that, I would ask that the Court vacate the district court's order and order to remand back to the State court in both cases. Thank you. Thank you both.